## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **GARRY LYNN BAKER,** | § | |
| **TDCJ No. 01961510,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-18-CA-0778-FB** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* petitioner Garry Lynn Baker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and supplemental memorandum (ECF No. 3), respondent's Answer (ECF No. 22), and petitioner's Reply thereto (ECF No. 26).   Having reviewed the record and pleadings submitted by both parties, the Court concludes petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

## I.  Background

The facts of petitioner's case were accurately summarized by the Texas Fourth Court of Appeals on direct appeal:

> When [petitioner]'s former stepdaughter, A.H., was fifteen, she told her mother, Josefina, that [petitioner] had repeatedly sexually assaulted her over a period of years when she was younger.   A.H. testified that [petitioner] began assaulting her after he began living with her, her sister, and Josefina in Galveston, when A.H. was five or six years old.   The assaults continued after they moved to San Antonio when A.H. was in the second grade and they occurred three or four times a week.   The family left San Antonio and moved several places until [petitioner] abandoned them in Las Vegas.   They returned to Galveston, where Josefina gave birth to [petitioner]'s child in April 2004.   Josefina and [petitioner] married later in 2004 and stayed together until sometime in 2006, when Josefina

divorced him.  A.H. testified the last time she saw [petitioner] was in the summer of 2006.  In 2008, Josefina married Michael.  Witnesses testified that Michael and [petitioner] had grown up together and called each other brothers.  In 2010, Michael adopted A.H. and her two sisters, including [petitioner]'s biological daughter.  The same year, A.H. made her outcry.

[Petitioner] was indicted by a Bexar County grand jury in 2012, charged with three counts of aggravated assault of a child and one count of indecency with a child by contact, all alleged to have occurred in Bexar County in 2003. [Petitioner] requested and was appointed counsel to represent him.

At a pretrial hearing on the Friday before the Monday trial was scheduled to begin, [petitioner]'s appointed attorney advised the court that [petitioner] wanted him removed as counsel and that [petitioner] wished to represent himself. The trial judge admonished [petitioner] about his rights, the charges against him, and the dangers and pitfalls of representing himself.  He also questioned [petitioner] to determine whether [petitioner] understood his rights and the import of waiving his rights.  [Petitioner] persisted in his desire to represent himself. The trial court allowed it and appointed standby counsel.  The court advised the parties that jury selection would begin the following Monday and adjourned so that [petitioner] could review witness statements and discovery and prepare subpoenas.  The court admonished [petitioner] further the following Monday morning and the trial began.  The jury found [petitioner] guilty on all counts. Punishment was tried to the court, and the State introduced evidence that [petitioner] had been previously convicted of an offense under section 22.011 of the Texas Penal Code.  The trial court therefore imposed a life sentence on each count pursuant to section 12.42(c)(2) of the Penal Code.

*Baker v. State*, No. 04-14-00676-CR, 2016 WL 1588278, at *1 (Tex. App.–San Antonio, April 20, 2016, pet. ref'd); (ECF No. 23-16 at 2-3).

Petitioner appealed to the Texas Fourth Court of Appeals which affirmed the convictions in an unpublished opinion.  *Id*.  The Texas Court of Criminal Appeals (TCCA) then refused his petition for discretionary review (PDR).  *Baker v. State*, No. 0575-16 (Tex. Crim. App. Aug. 24, 2016).  On April 18, 2017, petitioner filed his first state habeas corpus application challenging his underlying convictions and sentences which was ultimately dismissed by the TCCA for failing to comply with the Texas Rules of Appellate Procedure.  *Ex parte Baker*, No. 86,924-01 (Tex. Crim. App.); (ECF Nos. 23-21 and 23-22).  Thereafter, Petitioner filed his second state

habeas corpus application challenging the constitutionality of his state court convictions which was eventually denied by the TCCA without written order on June 6, 2018. *Ex parte Baker*, No. 86,924-03 (Tex. Crim. App.); (ECF Nos. 23-38, 24-12 through 24-31).[1]

Petitioner initiated the instant proceedings on July 2, 2018, when he placed his initial form petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 in the prison mailing system.[2]  (ECF No. 1 at 10).  In her answer (ECF No. 22), respondent avers the petition is timely and not successive, and contends that each of the claims raised by petitioner, with the exception of Claims 1 and 12, has been exhausted in state court during petitioner's state habeas proceedings.  Respondent relies exclusively on the state court's adjudication of these allegations and argues federal habeas relief is precluded under the AEDPA's deferential standard.

## II.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was

---

[1]  For some unknown reason, respondent submitted the record for petitioner's second state habeas proceeding in 20 separate docket entries despite the record being just 257 pages long.  (ECF Nos. 23-38, 24-12 through 24-31).

[2]  Petitioner raises the following allegations in his petition and supplemental memorandum: (1) his due process rights were violated during his state habeas proceedings, (2) there was an attempt to corrupt potential jurors when one potential juror overheard two attorneys discussing his criminal history during voir dire, (3) his appellate counsel provided ineffective assistance, (4) the prosecution made inappropriate comments during voir dire, (5) there were numerous due process violations that tainted the entire trial process, (6) there were numerous procedural violations that prevented him from receiving a fair trial, (7) he received ineffective assistance from standby counsel, (8) the trial court's denial of a continuance prevented him from adequately representing himself, (9) the prosecution made inappropriate comments during closing arguments, (10) he is actually innocent of the charges, (11) he was twice convicted of the same offense in violation of his double jeopardy rights, and (12) the TCCA violated his due process rights by denying his state habeas application without written order.

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III.  Analysis

**A.      Petitioner's State Habeas Proceedings (Claims 1, 12)**

In his first and last grounds for relief, petitioner contends his due process rights were violated during his state habeas proceedings.   Specifically, petitioner complains that: (1) the State filed an untimely answer, (2) the trial court waited 275 days to send his writ to the TCCA, and (3) the TCCA denied his writ without written order and without having a single judge review the merits of his allegations.   Such claims do not entitle a petitioner to relief because alleged errors or irregularities occurring in state habeas proceedings do not raise cognizable claims for federal habeas relief.   *See Henderson v. Stephens*, 791 F.3d 567, 578 (5th Cir. 2015) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas corpus relief"); *Ladd v. Stevens*, 748 F.3d 637, 644 (5th Cir. 2014) (same).   This is because an attack on the validity of a state habeas corpus proceeding does not impact the validity of the underlying state criminal conviction.   *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (reiterating that "an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself.") (citations omitted).   For this reason, petitioner's complaints concerning his state habeas corpus proceeding do not furnish a basis for federal habeas corpus relief and are denied.

**B.      Jury Tampering (Claim 2).**

Petitioner next contends that an attempt to tamper with the jury occurred prior to jury selection.   During voir dire, prospective juror Virginia Grace Dufresne stated she had "inadvertently heard some conversation in the hallway during the break regarding [petitioner]'s history."   (ECF No. 23-6 at 65-68).   After being questioned further by the trial court, Ms. Dufresne stated she overheard a conversation in passing between two lawyers concerning

petitioner having served time in a penitentiary.  She did not share the information with anybody and did not believe anyone else on the jury heard the conversation.  Ms. Dufresne admitted the information would probably prevent her from being unbiased, so the trial court granted petitioner's challenge for cause.

Petitioner now argues the conversation overheard by Ms. Dufresne amounts to an attempt to corrupt potential jurors that affected his right to a fair trial.  However, petitioner raised this same allegation during his state habeas proceedings which the state court habeas court rejected.  Because petitioner fails to demonstrate that this adjudication was either contrary to, or an unreasonable application of, clearly established federal law, petitioner's claim fails.

The Supreme Court "has clearly established a constitutional rule forbidding a jury from being exposed to an external influence."  *Oliver v. Quarterman*, 541 F.3d 329, 336 (5th Cir. 2008). But when a criminal defendant alleges that an outside intrusion improperly influenced the jury, the jury's verdict will be set aside only if the intrusion affected the jury's deliberations and, thereby, its verdict.  *See United States v. Olano*, 507 U.S. 725, 739 (1993).  Here, the only prospective juror to hear the conversation, Ms. Dufresne, was struck for cause and did not serve on the jury. Petitioner makes no argument that an impartial juror sat on his jury, and the record does not indicate that any other prospective juror overheard the conversation in question.  As such, petitioner fails to demonstrate any constitutional error.  *See Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004) (finding a trial court's erroneous venire rulings do not constitute reversible constitutional error "so long as the jury that sits is impartial.") (citation omitted); *Soria v. Johnson*, 207 F.3d 232, 241-42 (5th Cir. 2000) ("[B]ecause [the venire member] did not sit on [the petitioner's] jury, [the petitioner] is precluded from making a substantial showing of the denial of a federal right with respect to this claim.").

**C.**   **Petitioner's Appeal (Claim 3)**

In his third allegation, petitioner contends he received ineffective assistance of counsel during his direct appeal proceedings.   A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law.   *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).   The familiar standard set out in *Strickland v. Washington*[3] to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).   Thus, to obtain relief, petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of petitioner's appeal would have been different.   *Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015).   He does neither.

Petitioner does not allege that his appellate counsel, Shawn Sheffield, failed to raise a meritorious claim that would have changed the outcome of his direct appeal proceedings. Instead, petitioner faults Mr. Sheffield for failing to adequately communicate with him. According to petitioner, Mr. Sheffield never informed him of the status of his appeal or tell him about his right to file a PDR.   Counsel also did not provide him with any records or briefs that would allow him to review counsel's work.

Petitioner raised these allegations during his state habeas proceedings.   In response, Mr. Sheffield submitted an affidavit detailing his representation of petitioner and his attempts to communicate with his client.   (ECF No. 24-30 at 11-12).   The state habeas court summarized Mr. Sheffield's affidavit as follows:

---

[3]      *466 U.S. 668 (1984).*

a.      [Mr. Sheffield] was appointed as the appellate attorney for [petitioner] on September 18, 2014.

b.      [Mr. Sheffield] mailed a letter to [petitioner] on September 20, 2014.  The letter detailed information regarding [petitioner]'s appeal.  [Mr. Sheffield] requested that [petitioner] contact him regarding the appeal.   [Mr. Sheffield] did not receive a response from [petitioner].

c.      [Mr. Sheffield] proceeded with representing [petitioner] on his appeal.

d.      [Mr. Sheffield] reviewed the trial record and clerk's record of [petitioner]'s criminal jury trial.

e.      [Mr. Sheffield] filed the appeal brief for [petitioner] on several grounds. The issues included that [petitioner] did not voluntarily waive his right to counsel and that [petitioner] should have been ordered to have an examination [to] determine if [petitioner] was competent to stand trial.

f.      [Mr. Sheffield] also consulted with Michael Robbins of the Public Defender's appellate office regarding other issues that might be used in [petitioner]'s appeal.

g.      [Petitioner] left very few appealable issues because of inexperience and lack of knowledge regarding preservation of error.

h.      [Mr. Sheffield] contacted [petitioner] to inform him that he had filed his appellate brief on April 1, 2015.  In the letter, [Mr. Sheffield] stated that [petitioner] should contact him if he had any questions regarding his appeal.

I.      [Petitioner] filed a letter with the 4th Court of Appeals stating that [Mr. Sheffield] would not communicate with, him or his family which was not correct since [Mr. Sheffield] had not received any communication from [petitioner] or his family during the appeal process.  If [Mr. Sheffield] had of received anything, he would have responded.

j.      The trial court's decision was affirmed on April 20, 2016.  [Mr. Sheffield] informed [petitioner] of the decision and requested that [petitioner] contact him regarding filing a Petition for Discretionary Review (PDR). [Mr. Sheffield] informed [petitioner] that it was important that he contact him as soon as possible because of the limited time to file a PDR.

k.      [Petitioner] failed to contact [Mr. Sheffield].

1.      [Petitioner] again contacted the 4th Court of Appeals and not [Mr. Sheffield] within two weeks of the appellate decision.

m.      [Mr. Sheffield] filed two extension[s] of time to file the PDR.

n.      [Mr. Sheffield] filed a Petition for Discretionary Review with the Court of
        Criminal Appeals on June 21, 2016.   The Court of Criminal Appeals
        denied the PDR on August 24, 2016.   [Petitioner] was informed of this
        refusal.

(ECF No. 24-27 at 3-6).

The state habeas trial court found Mr. Sheffield's affidavit to be truthful and credible and concluded that petitioner failed to demonstrate that counsel was ineffective.  *Id*. at 10.  These findings and conclusions were adopted by the TCCA when it denied petitioner's state habeas application.  (ECF No. 23-38).

Petitioner has not rebutted the state court's finding of fact with clear and convincing evidence, but instead offers only conclusory statements which are insufficient to support an ineffective-assistance claim.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).  Indeed, the record supports appellate counsel's assertions about his unsuccessful attempts to contact petitioner about his direct appeal proceedings.  Consequently, petitioner has not shown that state habeas court's rejection of this claim to be contrary to, or an unreasonable application of, the *Strickland* standard.  Federal habeas relief is therefore denied.

## D.      <u>Improper Jury Argument</u> (Claims 4, 9)

In Claim 4, petitioner contends the prosecution used a "sensational subject matter" during voir dire which rendered his trial fundamentally unfair.  In Claim 9, he argues the prosecution made an inappropriate comment to the jury during closing argument which undermined his right to an impartial jury.  Both allegations were raised and rejected during petitioner's state habeas

proceedings.   Petitioner fails to demonstrate that the state court's rejection of the claims was either contrary, or an unreasonable application of, clearly established federal law.

Allegations of prosecutorial misconduct are analyzed in two steps.  *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted).   The first is to evaluate whether the prosecutor made an improper remark.  *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted).   If so, the second step is to determine whether the defendant suffered prejudice.  *Id*.   This second inquiry sets a high bar:  "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected."  *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir. 2005)).   A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict."  *Id*.   Thus, in deciding whether serious doubt infected the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction."  *Id*. (quoting *United States v. Mares,* 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

There was nothing improper about the prosecution's statement to potential jurors during voir dire.  During opening statements to the prospective voir dire panel, the prosecutor made the following statement:

> MR. De LEON:     We've heard all kind of cases where people are molested as children, they don't tell for months, years.  Even people who are elderly and they say, you know what, 50 years ago when I was a kid, 60 years ago I was molested by such and such family member but they never told anybody.  We've all heard that; correct?  Sure.  And the law says that we are

allowed to prosecute any case regardless of the delay of the outcry.  Okay?  So it could be years since the last sexual act occurred, it could be a decade.  Okay?

Has anybody ever heard of Jerry Sundusky [sic]?

VENIRE PANEL:      Yes.

MR. De LEON:       Everybody.  Penn State coach who molested a lot of boys over the years.  And in that case does anybody know if there was DNA evidence in that case?  No.  You're not going to have DNA evidence after a day or two, three days, DNA is gone.  Okay?  And these boys are saying years ago Coach Sandusky was molesting me.  Right?  And they came forward, he had a trial, he was found guilty all without DNA evidence.  Okay?  So remember when I talked about the elements of on or about a particular day in Bexar County, Texas, the defendant?  Did I ever mention in there and the State brought you DNA evidence?  No, I never did.  We don't have to do it because sometimes typically in these type of cases it's not available.  All right?

(ECF No. 23-6 at 26-27).  Petitioner contends the prosecutor's mention of the Sandusky trial was a misleading attempt to sensationalize his trial which tainted the jury's opinion of him by comparing his case to one with multiple victims and homosexual acts.  It is clear from the record, however, that the prosecutor mentioned the Sandusky case only to demonstrate why DNA evidence may not be presented in cases such as this where the sexual assault occurred years ago.  Such was not an improper argument, but rather an easy way to explain the law to the jury using a well-known example.

Similarly, there was nothing improper about the prosecution's closing argument following the guilt/innocence phase.  Petitioner contends the prosecutor told the jury that it was unnecessary to review the record when deliberating, but instead only needed to look at the charges against him.  According to petitioner, this statement "destroyed" the jury's impartiality and led to his conviction.  But the Court is unable to find anywhere in the record where the prosecution makes such a statement.  The closest thing the Court could find was the following:

> Your job now, folks, is to go back to the jury room, look at the jury charge that you're going to have back there with you and decide, Did we prove it beyond a reasonable doubt that on or about a particular day in Bexar County, Texas, the Defendant intentionally and knowingly placed the male sexual organ into the mouth of [A.H.] who was younger than 14 years of age. It's pretty straightforward.

> And to get real technical with you, technically you can find him guilty of all four counts. Or for some reason if you think you can find him guilty of two counts, but not—and not guilty of the other two counts or guilty on one count but not the other three for some reason. I think it's pretty clear that all four he's guilty of. Okay? But if that's a concern, I just want to answer that question to you.

(ECF No. 23-8 at 28).

Yet, even this statement does not tell the jury to ignore the evidence or simply follow the indictment as petitioner suggests. Rather, the prosecutor simply tells the jury to follow the jury charge when evaluating the evidence to determine whether the State has proved its case, which he believes the State has done. A summation of, or reasonable inference from, the evidence is a proper area for prosecutorial jury argument. *See, e.g., Norris v. Davis*, 826 F.3d 821, 832 n.10 (5th Cir. 2016) (recognizing the four areas of permissible subjects for jury argument under Texas law as summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement). As the prosecutor's remarks clearly fell within one of these categories, they were not improper.

Finally, even if the above comments were improper, this Court finds nothing prejudicial about the prosecution's remarks. The Sandusky comment, made during the opening statements of voir dire, was only mentioned briefly and was never raised again throughout petitioner's trial. And the comment about not reviewing the record—to the extent such a comment was even made during closing argument—was cured by the trial court's instructions that the defendant's indictment and the arguments of counsel are not to be considered as evidence of guilt. *See Blueford v. Arkansas*, 566 U.S. 599, 606 (2012) (finding jury is "presumed to follow its

12

instructions.") (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). As such, the magnitude of the prejudicial effect of the prosecutor's remarks, if any, was slight. *Ebron,* 683 F.3d at 140. Habeas relief is therefore denied.

E.      **Various Constitutional Violations (Claims 5, 6).**

In his next two grounds for relief, petitioner asserts a litany of due process violations and constitutional errors occurred before and during his trial. Specifically, petitioner contends (1) he was not given his *Miranda* rights or taken before a magistrate judge after being arrested, (2) he was denied counsel for his first court appearance, (3) the charges against him were improperly enhanced, (4) he was not informed of the automatic life-sentence enhancement, (5) the State used perjured testimony to obtain a conviction, and (6) his sentence amounts to cruel and unusual punishment. No argument or authority is provided by petitioner for any of these claims. In fact, the majority of the assertions are accompanied by no briefing whatsoever. For this reason alone, petitioner's claims could be denied.

Under Rule 2© of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same). Here, petitioner's allegations are conclusory, speculative, and unsupported by any evidence or facts. "Absent evidence in the record," however, this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910

F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011).   Thus, habeas relief is unavailable because the claims are conclusory.  *Ross*, 694 F.2d at 1011.

Moreover, petitioner raised almost identical conclusory allegations during his state habeas proceeding which were denied by the state habeas court.  In rejecting the allegations, the state court concluded that petitioner "fail[ed] to meet his burden by alleging or proving facts that would entitle him to relief[.]"  (ECF No. 24-27 at 6).    Petitioner has not even attempted to demonstrate that this decision was either contrary to, or an unreasonable application of, clearly established federal law.  Consequently, petitioner's claims for relief are denied.

**F.**     <u>**Standby Counsel**</u> **(Claim 7).**

Prior to the beginning of his trial, petitioner informed the trial court that he wanted to represent himself and asked that his appointed counsel, Bob Hicks, be removed.  (ECF No. 23-4).  After questioning petitioner at length, the trial court found petitioner competent to represent himself and appointed Mr. Hicks as standby counsel.  The trial court admonished petitioner about the pitfalls of self-representation and warned petitioner that, as standby counsel, Mr. Hicks was only there to answer questions and not to initiate, advise, or participate in the trial. Petitioner indicated that he understood and then proceeded to represent himself at trial.

Petitioner now alleges that Mr. Hicks was ineffective as standby counsel.  According to petitioner, while Mr. Hicks had a constitutional duty to assist him in his defense, counsel only met with him a total of four times prior to trial, consistently lied to him, failed to give him *Brady* evidence turned over by the State, and failed to notify him of the automatic life-sentence enhancement to the charges.  Petitioner's claim fails for several reasons.

To start, a *pro se* defendant has no constitutional right to standby counsel.  *United States v. Oliver*, 630 F.3d 397, 413-14 (5th Cir. 2011) (citing *United States v. Morrison*, 153 F.3d 34,

55 (2nd Cir. 1998)); *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998); *see also Burgess v. State*, 816 S.W.2d 424, 429 (Tex. Crim. App. 1991). Instead, the decision to appoint standby counsel is within the sound discretion of the trial judge. *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975). Because there is no constitutional right to standby counsel, a petitioner cannot prevail on a claim alleging ineffective assistance of standby counsel. *Oliver*, 630 F.3d at 414 ("[W]ithout a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel.") (quoting *Morrison*, 153 F.3d at 55). As such, petitioner's allegations concerning Mr. Hicks's performance as standby counsel lack merit and will be dismissed.

Furthermore, to the extent petitioner claims he was not given discovery turned over by the State or notified of the automatic life-sentence enhancement, those claims are belied by the record. *See* ECF Nos. 23-2 at 81 (Notice of Auto-Life Enhancement), 86-89 (Discovery Acknowledgment signed by petitioner); No. 23-4 at 12-14 (indicating Mr. Hicks provided witness statements and the discovery packet and reviewed it with petitioner); No. 23-5 at 3 (pretrial hearing where trial court notifies petitioner of auto-life enhancement), 9-10 (statement to trial court from Mr. Hicks that petitioner "has everything I have.").

Regardless, petitioner raised these allegations concerning standby counsel during his state habeas proceedings. In response, Mr. Hicks submitted an affidavit detailing his role as standby counsel. (ECF Nos. 24-23 at 11-13; 24-24 at 1-2). The state habeas court summarized Mr. Hick's affidavit as follows:

    a.    Mr. Hicks denied all allegations of ineffective assistance of counsel contained in the writ application.

    b.    [Petitioner] insisted that he wanted to represent himself despite lengthy and detailed warnings by the trial judge as to the potential pitfalls of self-representation.

c.      [Petitioner] repeated[ly] asserted that he understood his rights as they were pointed out to him.

d.      [Petitioner] affirmatively waived his right to counsel, both prior to and following warnings by the trial judge.

e.      [Petitioner] was specifically warned that he would lose the issue of ineffective assistance of counsel.

f.      On or about April 19, 2014, [Mr. Hicks] was appointed to represent [petitioner] against charges alleged in cause number 2012CR4875.

g.      [Mr. Hicks] was relieved of his duties as trial counsel for [petitioner] on September 12, 2014.

h.      [Mr. Hicks] was designated as stand-by counsel.

I.      [Petitioner] was aware that he could have called expert or lay witnesses in his defense.

j.      Several subpoenas were issued for prospective witnesses pursuant to [petitioner]'s request and [] service was handled by the appointed investigator.

k.      [Mr. Hicks] visited [petitioner] at the jail on several occasions to discuss the facts and available strategies in his case and conferred with him in court or at the jail to advise him of any plea bargain offers, all of which were rejected.

1.      [Mr. Hicks] explained to [petitioner] that the charges these charges [sic] were not barred by double jeopardy because [petitioner] had pled to charges in Galveston County against the same complainant.

m.      [Petitioner] never asked [Mr. Hicks] any questions about the conduct of voir dire, either before or during the process, or about objections to any of the trial proceedings.

n.      [Mr. Hicks] provided [petitioner] with the information given to him by the State during discovery.

o.      [Petitioner] did not ask [Mr. Hicks] questions during the trial and, except for the alleged victim, [Mr. Hicks] was generally impressed by [petitioner]'s attempts to impeach or otherwise discredit the State's witnesses on cross examination.

p.      [Petitioner] never asked [Mr. Hicks] about trial strategies.

q.      [Mr. Hicks] prepared and filed with the Court a notice of appeal signed by [petitioner].  [Mr. Hicks] does not have a specific memory of discussing [petitioner]'s appeal rights but it would have been his normal procedure and he believes that he did so.

r.      [Petitioner] was given an attorney to handle his appeal.

s.      [Mr. Hicks] did not have knowledge of any due process violations by the State before or during the trial and specifically any knowing introduction of false information before the jury or any violations of the State's duty to turn over exculpatory evidence or any failure on [Mr. Hicks]'s part to turn over discovery that was in response to the Court's direction.

t.      The records, regarding [petitioner]'s plea deal in Galveston, Texas, were hardly exculpatory or probative of [petitioner]'s actual innocence.

u.      [Mr. Hicks] did not fail to advise [petitioner] that he could have asked the judge for an attorney since [petitioner] requested that he be discharged as the attorney and [petitioner] wanted to represent himself after the Court's lengthy and detailed discussion about the risks of self-representation.

v.      [Petitioner] mentioned certain witnesses he thought would be beneficial to his case but provided no specific information about the witnesses that would assist in serving them subpoenas.  The witnesses included persons on the State's witness list.  [Mr. Hicks] did not think that their testimony would be relevant or useful in establishing [petitioner]'s innocence. Immediately prior to trial [petitioner] provided possible locations for the witnesses and after a search, most were served.  [Mr. Hicks] believes that only one witness still could not be located for service.

w.      [Mr. Hicks]'s memory is that those witnesses gave evidence on direct examination that supported [petitioner]'s guilt.

(ECF Nos. 24-26 at 17; 24-27 at 1-3).

The state habeas trial court found Mr. Hicks's affidavit to be truthful and credible and concluded that petitioner failed to demonstrate that counsel was ineffective.  (ECF No. 24-27 at 3, 6-10).  These findings and conclusions were adopted by the TCCA when it denied petitioner's state habeas application.  (ECF No. 23-38).  As with his other claims for relief, petitioner has not rebutted the state court's finding of fact with clear and convincing evidence, but instead offers only conclusory statements which are insufficient to support an ineffective-assistance claim.  *See*

*Miller v. Johnson*, 200 F.3d at 282.   Again, a petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence.  *Miller v. Thaler*, 714 F.3d at 903.  Because petitioner has not shown that state habeas court's rejection of this claim to be unreasonable, federal habeas relief is denied.

## G.     Denial of Continuance (Claim 8)

In Claim 8, petitioner contends the trial court deprived him of due process by not granting him a continuance to allow him to adequately prepare for trial.  The record indicates petitioner's trial was scheduled for Monday, September 15, 2014.   On the Friday before trial, petitioner informed the trial court that he wanted to represent himself and asked that his appointed counsel be removed.  (ECF No. 23-4).   After being admonished about his rights and the dangers of self-representation, petitioner persisted in his desire to represent himself.   The trial court found him competent and appointed standby counsel to answer any questions he may have during trial.   The court then advised the parties that the trial would begin on Monday and adjourned so petitioner could review evidence and prepare subpoenas.   Nevertheless, on the day of trial, petitioner expressed surprise that his trial was set to begin.   (ECF No. 23-5).   While he did not specifically request a continuance, petitioner stated his concern that he did not have enough time to prepare his defense.   He now contends the trial court's refusal to grant him more time to prepare violated his right to a meaningful defense.

Trial judges have "broad discretion" when ruling on motions for a continuance.  *United States v. Scott*, 48 F.3d 1389, 1393 (5th Cir. 1995).   In order to prevail on such a claim in the habeas context, a petitioner must show that the failure to grant a continuance "harmed the defense" and that the trial court's abuse of discretion "was so arbitrary and fundamentally unfair

as to violate the constitutional principles of due process." *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004) (citation omitted); *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) ("If abuse of discretion is demonstrated [concerning the denial of a motion for continuance], the petitioner must sustain the burden common to due process claims that 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'") (citation omitted).  In other words, petitioner must establish "a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *McFadden v. Cabana*, 851 F.2d 784, 788 (5th Cir. 1988) (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985)).

Petitioner fails to make this showing.  While his implied request for more time was denied, petitioner was able to subpoena witnesses and present a defense aimed at demonstrating that the charges filed against him were the result of a conspiracy against him.  Petitioner has not shown that the trial court's denial of a last-minute continuance was so arbitrary and fundamentally unfair as to constitute a due process violation.  Furthermore, petitioner has not pointed to a single witness or piece of evidence that he could have been presented had the trial court granted him a continuance.  Indeed, petitioner's trial had been rescheduled on four different occasions, and petitioner had been represented by counsel up until the pretrial hearing. (ECF No. 23-7 at 129).  Counsel issued subpoenas and gathered evidence on petitioner's behalf, and petitioner was given time to review the evidence and issue additional subpoenas prior to trial.  As such, petitioner's conclusory and speculative assertions of harm are unsupported by the record and are insufficient to demonstrate that the state habeas court's rejection of this claim was unreasonable.  Relief is denied.

H.     __Actual Innocence__ (Claim 10)

Petitioner next contends he is "actually innocent" of aggravated sexual assault.   But "freestanding" claims of actual innocence, such as the allegation now before the Court, do not provide a valid basis for federal habeas relief.  *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact."  *Herrera*, 506 U.S. at 399.  Although the *Herrera* court left open the question of whether, in a capital case, "a truly persuasive demonstration of 'actual innocence' made after trial would  . . . warrant habeas relief if there were no state avenue open to process such a claim," 506 U.S. at 417, the Fifth Circuit has consistently rejected this theory.[4]  *See Cantu v. Thaler*, 632 F.3d 157, 167 (5th Cir. 2011); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases).  Because the Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review, petitioner's allegation must be rejected.

Even assuming petitioner's actual-innocence claim could be the basis for federal relief, it would only be cognizable if there were no state procedure available for making the claim. *Herrera*, 506 U.S. at 417; *Graves*, 351 F.3d at 151.  Such is not the situation in Texas, where state procedures are available to raise actual-innocence claims in clemency proceedings or a state habeas petition.  *See* Tex. Crim. Proc. Code art. 48.01 (West 2019); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998).  Indeed, petitioner unsuccessfully raised this actual-innocence allegation during his state habeas corpus proceedings.  (ECF No. 24-14 at 4-5).   Thus,

---

[4]      In later revisiting the issue of actual innocence, the Supreme Court declined to resolve the question of whether freestanding actual-innocence claims are to be recognized in federal habeas proceedings.  *House v. Bell*, 547 U.S. 518, 555 (2006).

petitioner's freestanding claim of actual innocence is denied.

## I.       Double Jeopardy **(Claim 11)**

In Claim 11, petitioner contends he was twice convicted of the same offense in violation of his rights against double jeopardy.  The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  This clause protects against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *United States v. Dixon*, 509 U.S. 688, 695-96 (1993).  In the multiple-punishment context, the Double Jeopardy Clause protects only against the imposition of multiple criminal punishments for the same offense.  *Hudson v. United States*, 522 U.S. 93, 99 (1997).

Here, petitioner contends he is being subjected to multiple punishments for the same offense due to the fact that he had been previously convicted of sexual assault of a child in Galveston County and sentenced to two years.   However, the record demonstrates that petitioner's Galveston conviction was for an offense committed in April 2003, while the instant convictions were for offenses committed in October and November 2003.  *See* ECF No. 23-10 at 13 (Judgment from Galveston County); ECF No. 24-19 at 8 (Indictment in the instant case).  Thus, petitioner fails to show that his convictions violated the Double Jeopardy Clause, much less that the state court's rejection of this claim was unreasonable.  Relief is denied.

## J.       Cumulative Error

Finally, petitioner argues in his Reply that, even if none of the above allegations constitutes error, their cumulative effect denied him a fair trial.  As discussed above, however, petitioner has not demonstrated that *any* constitutional error occurred.  The Fifth Circuit has

made it clear that cumulative error analysis is only appropriate where there is error to cumulate. *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991); *United States v. $9,041,598.68*, 163 F.3d 238, 250 (5th Cir. 1999). Allegations that, alone, are insufficient to demonstrate constitutional error cannot be combined to create reversible error. *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero."). There is therefore nothing for this Court to cumulate. Furthermore, even assuming petitioner had established some sort of trial court error, federal habeas relief would still not be warranted because the cumulative error doctrine provides habeas relief only where the constitutional errors committed in the state court so fatally infected the trial that they violate the trial's fundamental fairness. *Derden*, 938 F.2d at 609. Petitioner has made no such demonstration.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

### V.  <u>Conclusion and Order</u>

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceeding was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during petitioner's state trial and appellate proceedings.  As a result, petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.     Federal habeas corpus relief is **DENIED** and petitioner Gary Lynn Baker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.     No Certificate of Appealability shall issue in this case; and

3.     All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the 27th day of April, 2020.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE